# CHARLESTON.

### ASHLAND FINANCE CO. *v.* J. M. DUDLEY
### (No. 5211.)

Submitted February 17, 1925.    Decided February 24, 1925.

1. CHATTEL MORTGAGES—*Chattel Mortgage Duly Recorded in Another State Superior to Attachment Lien Subsequently Secured on Automobile Brought Into State.*

    Where a mortgagor removed a mortgaged automobile into this state from the state of Kentucky, where the mortgage thereon was duly recorded, the mortgage lien was superior to an attachment lien subsequently secured on the automobile in this state, it not appearing that the mortgagee consented to, or had notice of such removal.    (p. 258.)

    (Chattel Mortgages, 11 C. J. § 33.)

    (NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

2. *Point 3 of Syllabus in Ballard* v. *Great Western M. & M. Co., 19 S. E. 510, Disapproved.*

    Point three of the syllabus in the case of *Ballard* v. *Great Western M. & M. Co.,* 39 W. Va. 394, disapproved.    (p. 261.)

Error to Circuit Court, Cabell County.

Action by the Ashland Finance Company against J. M. Dudley.   From a judgment for defendant, plaintiff brings error.

*Reversed and remanded.*

*T. Selden Jones,* for plaintiff in error.
*J. Blackburn Watts,* for defendant in error.

HATCHER, JUDGE:

The Ashland Finance Company has brought this case here on error from the judgment of the Circuit Court of Cabell County. A jury was waived and the case submitted to the court on an agreed statement of facts, which being brief, is here copied in full:

### "STATEMENT OF CASE, AND AGREED STATEMENT OF FACTS.

The Ashland Finance Co., a corporation existing under the laws of the State of Kentucky, having its principal office at Ashland, in the County of Boyd, and State of Kentucky, holds a chattel mortgage on a certain Buick automobile. The chattel mortgage is dated April 25, 1924, and executed by one Swift to secure the payment of $450.00 as purchase money for said automobile, which sum of $450.00 is payable for ten months at the rate of $45.00 per month.

The said Swift is a resident of the city of Ashland, Boyd County, Kentucky, and the chattel mortgage was recorded in the Boyd County Court Clerk's office, of Boyd County, Kentucky, on the 25th day of April, 1924.

On the 28th day of May, 1924, the said Swift was driving said automobile in the State of West Virginia, and had an accident with one J. M. Dudley at the town of Milton, Cabell County, West Virginia. Suit was instituted by the said Dudley against the said Swift on the 28th day of May, 1924, and the said automobile was attached on that day pending the outcome of said suit. On the 9th day of June, 1924, the said Dudley obtained judgment against Swift for the sum of $300.00, and the said attachment was sustained. The aforesaid chattel mortgage has not been recorded in the State of West Virginia.

The Ashland Finance Co. claims the prior lien on said automobile by virtue of their chattel mortgage, recorded in the County of Boyd, and State of Kentucky, while the said J. M. Dudley claims the prior lien on said automobile by virtue of his attachment. The question is which of the respective parties have the prior lien?"

The answer of the trial court to the question asked in the closing sentence of the foregoing statement was in favor of Dudley, and judgment was entered accordingly.

The general rule, as stated in the textbooks and encyclopedias, and adopted by courts of last resort in nearly all the states, is that a chattel mortgage executed in good faith and valid under the laws of the State where executed, will be held to be valid by the courts of a sister state to which the property may be removed. If valid where made and properly recorded under the laws of the State where executed, it will be enforced in the courts of another State as a matter of comity, although not recorded there. In case a lien is secured against such property in the State to which it is removed, the lien will be treated as secondary to the lien of the chattel mortgage, unless the transaction contravenes the statute, the law or the policy of the former.

> 11 C. J. 424, para. 33.
> Minor, "Conflict of Laws," para. 132.
> Wharton, "Conflict of Laws," para. 355-b.
> Jones on Chattel Mortgages (5th ed.), para. 301.
> *Creelman Lumber Co.* v. *Lesh,* 73 Ark 16; 3 Ann. Cases, 108. (See note to the foregoing case, citing a large number of cases.)
> *Bank of U. S.* v. *Lee, et al.,* 13 Peters 107.
> *Adams* v. *Fellers* (S. C.), 70 S. E. 722.
> *In re: Shannahan and Wrightson Hdw. Co.* (Del.), 118 Atl. 599.

Further citation of authority in support of this principle is not necessary as it is so universally established throughout the states that in four states only, to-wit: Louisiana, Michigan, Pennsylvania, and Texas, has a contrary rule been judicially adopted. (11 C. J. 426.)

Our statute rendering chattel mortgages void as to creditors and subsequent purchasers without notice, (see section 5, chapter 74 of Barnes' Code), makes no specific reference to recording in this state mortgages made outside of the state. Consequently, by the weight of authority, no registration of a mortgage properly executed and recorded in a sister state is obligatory in this state, by reason of that statute.

"A statute relating to the recording of mortgages has no application to a mortgage made outside the state, unless specially made so, though the property be afterwards brought within the state; and it does not matter that such mortgage was made by a citizen of the state while temporarily absent in another state with such property. If the mortgage be duly recorded in the state where it was executed, and the mortgagor afterwards takes the property with him into another state, no registration of the mortgage in the latter state is necessary unless made so by positive statute of that state."

Jones on Chattel Mortgages, para. 303.

To the same effect is the holding of the court in the case of *Craig* v. *Williams*, 90 Va. 500. In its opinion, the court said:

"If the mortgage be duly recorded in the state where it was executed, and the mortgagor afterwards takes the property with him into another state, no registration of the mortgage is necessary unless made so by positive statute of that state."

See opinion which cites quite an array of authorities. The Virginia case, decided in 1894, also held as follows, supporting the general rule in regard to chattel mortgages:

"A trust deed of chattels, valid and recorded in another state, is valid in this state, though not recorded here."

Since that date, the Legislature of Virginia has passed a statute requiring a chattel mortgage made in another state to be recorded in Virginia before the foreign lien is permitted to attach to property found in the State of Virginia. Hence, the more recent decisions of that court are made with reference to the statute, and not in opposition to the general law on principle.

Counsel for Dudley bases his case on point three of the syllabus in the case of *Ballard* v. *Great Western M. & M. Co.*, 39 W. Va. 394, decided in 1894, which is as follows:

> "A valid lien by way of attachment created by levying a proper order of attachment upon personal property will take priority over a claimant under a deed of trust executed and recorded in the state of Kentucky, but which has never been recorded in this state in the county where the property is located."

Upon examining this case, we find no citation of authority, and no argument whatsoever, in support of this holding. It is our rule to pay strict obeisance to the former decisions of this court. We submit, though, that this rule should not be stubbornly followed when it leads us to oppose, as it would in this case, the almost unanimous holding of the courts of our sister states. Reconciliation to the holding of the Ballard case would be less difficult if it were founded on some prior decision of this state, or of the state of Virginia, or if it were based on some well reasoned theory, or citation of law. We might be constrained to follow it if that point of the syllabus had ever been cited or referred to in any way, in approval, in any decisions rendered since that date. But instead of being approved, it was impliedly receded from by this court in the case of *Sales Co.* v. *Yost,* 91 W. Va. 493, wherein we held:

> "The record of a lien, or contract of sale, with reservations of title until the purchase money be paid, is notice to all the world."

So far as we can ascertain, the Ballard case has been ignored completely by our court since its rendition. Begotten of no cited precedent, associated with no legal principle, and shunned in subsequent decisions, it has become a judicial pariah in our reports.

Counsel for Dudley also places reliance on the case of *Snyder* v. *Yates,* 112 Tenn. 309, from which his brief quotes extensively. In the Snyder case, the court rejected the lien of a chattel mortgage executed in Illinois as against the rights of attaching creditors in Tennessee, holding:

> "A doctrine of comity cannot give effect to the registration laws of another state, so as to give non-

98 W. Va.

residents a priority over the liens of resident creditors.''

But the principle announced in the Snyder case was later expressly repudiated by the Tennessee court in the case of *Newsum* v. *Hoffman,* reported in 137 S. W. 490, which held:

"When a chattel mortgage is executed and duly recorded in a foreign state, where the property then is, and where the mortgagor resides, and is valid under the laws of that state, the mortgagee, by the comity between states, has the better right, upon the subsequent removal of the property, as against levying or attaching creditor of, or an innocent purchaser from, the mortgagor in the state to which the property has been removed, although the mortgage is not recorded in the latter state, and although the mortgagor is permitted to retain possession until default, under the terms of the mortgage; but such comity should not be extended to cases wherein it appears that the mortgagee consented to such removal.''

In explaining its departure from the Snyder case, the court said:

"However, on further consideration, we yield to the great weight of authority on the general question, with the qualification concerning the effect of the consent of the mortgagee above indicated. It seems a churlish and ungracious course, if not an example of improvident judgment, to hold out against the generous comity of the many states which recognize the rule of interstate courtesy upon this subject.''

Rights in property perfected in one state should, in all fairness, be upheld by the courts of other states, wherever the property may be taken. Any holding contrary to this view will necessarily lead to confusion and injustice. A valid lien on the automobile in question was perfected in the state of Kentucky, and there is no evidence questioning the good faith of the transaction, or suggesting that the mortgage was given for the purpose of evading rights which might

subsequently attach thereto in a sister state. It is the same automobile here in West Virginia that it was in Kentucky, and no change has occurred to the parties or to the contract of mortgage, merely because the automobile was brought from Kentucky into this state. Without change in the parties, or the subject matter of a mortgage, it would indeed be harsh and severe to adjudge that the priority of a lien on personal property—particularly property of a migratory character, is changed merely because a state line is crossed.

Adopting the gracious phrases of the Tennessee court in its valedictory to the doctrine of the Snyder case, we too, *yield* to the great weight of authority, deeming it *improvident, ungracious* and even *churlish* to hold out against the *generous comity* of the many states which practice *interstate courtesy* in the matter.

We do not mean to hold, however, that comity would require us to give priority to a foreign lien in case the property covered thereby had become a part of the property of this state, and the owner of the foreign lien had failed to have his lien recorded here, within a reasonable time after the removal of the property to this state.

We therefore hold that the lien of the Ashland Finance Company, by virtue of its chattel mortgage on the automobile in question, takes precedence over the lien thereon obtained by the attachment of Dudley.

The judgment of the lower court is therefore reversed.

*Reversed and remanded.*