[Civil No. 2803.  Filed June 19, 1929.]

[278 Pac. 384.]

M. B. DAVIS, Defendant, and W. C. ALLEN, Intervener, Appellants, v. STANDARD ACCIDENT INSURANCE COMPANY, a Corporation, Appellee.

See Chattel Mortgages, 11 C. J., sec. 33, p. 424, n. 7; sec. 227, p. 539, n. 36; sec. 389, p. 647, n. 20.

Evidence, 22 C. J., sec. 87, p. 152, n. 97.

Waiver, 40 Cyc., p. 261, n. 13, p. 264, n. 25, p. 265, n. 27.

Mr. J. E. Morrison and Mr. Hess Seaman, for Appellants.

Messrs. Sloan, Holton, McKesson & Scott, for Appellee.

ROSS, J.—This is an action of replevin brought by the Standard Accident Insurance Company, hereafter referred to as the company, against M. B. Davis and W. C. Allen to recover certain personal property. The company having obtained judgment Davis and Allen prosecute this appeal therefrom.

The facts out of which the litigation grows are as follows: In April, 1927, Gray & Little, contractors, composed of J. W. Gray and Leroy. Little, were awarded by the United States government a contract to construct 16.383 miles of road in Strawberry-Clints Well section of the National Forest highway, route 10 Coconino county, Arizona. On the twenty-third day of April these contractors, to comply with the government's requirements, applied to the company to become surety upon their bid bond and also upon their faithful performance bond. In said application the contractors made to the company the following indemnity assignment:

"And for the better protection of said Company, the undersigned, as of the date hereof, hereby assigns, transfers and conveys to it, the said Standard Accident Insurance Company, all right, title and interest of the undersigned in and to all the tools, plant, equipment and materials of every nature and description that may now or hereafter be upon said work, . . . and authorizing and empowering said Company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials and sub-contracts, and enforce, use and enjoy such possession upon the following conditions, viz.: This assignment shall be in full force and effect, as of the date hereof, should the undersigned fail, refuse or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on the part of the undersigned under the said contract."

On the same day, to wit, April 23d, 1927, the company furnished the bid bond, also the faithful perform-

ance bond, and thereafter the contractors entered upon the performance of the contract. The contractors were not able to carry out their contract, and some time in September or October, 1927, under the insistence of the government, the company, as the contract authorized it to do, took over its performance, and in that connection took possession of the contractors' equipment, including work animals, tools, machinery, etc. It seems to be conceded that in completing the contract the company laid out over and above the contract price more than the value of the assigned property.

On the date of the contract of suretyship, the contractors lived in Imperial county, California, and their equipment, the sole property of Little, was also located in that county. At that time there was of record in the proper office of said county an unsatisfied, past-due, chattel mortgage on said property for $18,000, payable on or before two years from its date, to wit, December 15th, 1923. The mortgage was given by Leroy Little, the owner, to W. C. Allen to secure the former's promissory note for $18,000 and interest.

After said equipment was taken over by the company and while it was being employed by said company in the completion of the contract, Allen brought an action in the superior court of Coconino county, Arizona, to foreclose his chattel mortgage, and on the same day the suit was filed obtained a consent decree from Little, caused the property to be sold, and took title in the name of defendant Davis. Davis took possession of said equipment, and moved the same to Maricopa county, and thereafter the company brought an action of replevin against Davis, in which Allen intervened as the real owner. The question involved was, Which is superior or prior in right, the assignment of said equipment to the surety company or Allen's chattel mortgage? That was the issue as made by the pleadings, and was the issue on the trial.

When Allen filed his answer or petition in intervention, setting up his mortgage and the title he acquired under its foreclosure, the company replied that Allen was estopped to make any such claim, and set forth as evidence of such estoppel the contents of two letters exchanged between it and Allen, which letters, together with their dates, are as follows, to wit:

"April 26th, 1927.

"Mr. W. C. Allen,
    "c/o Globe Oil Milles,
       "Mexicala, Mexico—
"Dear Sir:
    "Re: Leroy Little, Caliexico, California:
"Mr. Little has applied to us for a contract bond and he states he is the owner of the following equipment: [Here follows description.]

"Kindly let us have a letter telling us what you know relative to this man's equipment as he has given you as a reference.

"We enclose a self-addressed, stamped envelope for your reply."

"Tulare, California, May 2, 1927.
"Standard Agency, Phoenix, Arizona,
    "Adams Hotel Building—
"Gentlemen: In reply to yours of April 26th, regarding Leroy Little, I beg to state that he is the owner of six hundred acres of improved land situated about five miles from Mexicali and it is estimated that this land is worth $75,000.00. Also replying to yours of the 26th regarding Leroy Little's ownership of stock and equipment beg to advise that he is the owner of this stock and equipment as listed, in fact he is the owner of considerably more than this, also in reply to his ownership which he has listed among 'other assets,' beg to advise that he is the owner of these 'other assets.' His reputation for honesty and integrity is excellent in the Mexicali and Calexico territory. Furthermore the writer has done business with Mr. Little that has run into a million dollars and I have always found that Mr. Little fulfilled his part of any contract.

"Very truly yours,
    "WM. C. ALLEN."

The case was submitted to the jury upon the theory that no recovery could be had by the company as against the mortgagee, Allen, if, at the time the company became surety on the Gray & Little bonds, it had actual notice of Allen's mortgage, unless by his conduct Allen had waived his mortgage lien. Conversely stated, the court instructed the jury to return a verdict for the company, if they found Allen had by his acts and conduct waived his mortgage lien, or that the company had no actual notice of such lien.

The verdict was in favor of the company, on which judgment was entered. The defendants, Allen and Davis, appeal.

The transcript of the testimony covers over 900 pages. It seems that the mass of testimony was upon issues the court later very properly eliminated from the case and of which no complaint is made. The questions involved are, principally, legal ones, there being little of disputed facts.

It is contended here by appellants that there was no evidence whatsoever to support the plea of estoppel or to justify an instruction on waiver. The basis of such plea or instruction, as we have heretofore said, was the letter written by Allen to the company in which he, as a business acquaintance of Little, indorsed the latter's statement of his assets and solvency as true, commended his honesty, and said nothing of his having a mortgage on the Little equipment. If this letter could have in any way been a moving cause of the company's signing bonds as surety to the contractors, the question of estoppel (or waiver, if it had been pleaded) could very properly have been submitted to the jury. The fact is, however, that the surety bond, as well also the bidder's bond, was executed by the company on April 23d, and the letter of inquiry sent to Allen was not written or mailed until April 26th, and his reply thereto was not written or mailed until May 2d. It is clear, therefore, that

Allen's representations did not influence the company to sign the bonds. The inquiry was a case of locking the barn after the horse was stolen. The representation, even though false, could not then be used as a basis of waiver for the reason that waiver must be intentional and upon a consideration, or the act relied on must be such as to constitute an estoppel. 27 R. C. L. 910, § 5. When Allen wrote the company, it had already bound itself as surety for Gray & Little. For that reason no estoppel was shown. 10 R. C. L. 688, § 19 et seq.

The only act or conduct pleaded or proved as a basis of waiver or estoppel was the letter Allen wrote the company in answer to its inquiry about Little and equipment. We think it will be conceded that what Allen stated, even though it be false, coming to appellee after it had become surety for Gray & Little, could not form the basis for either of such equitable defenses.

There can be no question under interstate comity but that appellee had at all times constructive notice of the Allen mortgage. This mortgage was placed of record in the proper county in California, that is, in the county where the property was located, where the mortgagor lived, as also the mortgagee, and under the laws of that state was constructive notice to all persons. A chattel mortgage, duly filed or recorded, conformable to the laws of the state where executed, and there conveying constructive notice, will continue to have the same effect, although the property thereby covered is removed into another state. *Silver* v. *McDonald,* 172 Minn. 458, 215 N. W. 844. But the court told the jury, in effect, that constructive notice to the appellee of Allen's mortgage would not protect such mortgagee as against the assignment of the property to appellee to indemnify it against loss, but that actual notice would. There being no evidence that appellee had actual notice of Allen's mortgage, the instruction

was equivalent to a directed verdict for appellee. This statement of the law, it will be conceded, is not in harmony with the general rule. The statement of the general rule is variously worded, but is found in its most concise form in Restatement of the Conflict of Laws, by the American Law Institute, section 287, as follows:

"If a chattel is validly mortgaged in accordance with the law of the state where it is situated at the time of the execution of the mortgage and is then taken into another state, the mortgagee's interest in the chattel is recognized in the second state."

In the recent case of *Forgan* v. *Bainbridge,* 34 Ariz. 408, 274 Pac. 155, we adopted a rule of the same import. For other statements of the rule see 11 C. J. 424, § 33, and 5 R. C. L. 399, § 21.

It is well settled that the laws of another state have no force or vitality in this state, and, if they are recognized and administered here in the settlement of controversies, it is through comity, and because such controversies originated under such laws. Under the general rule, "the mortgagee's interest in the chattel is recognized in the second state," whether it is recorded there or not. This recognition is not extended as a right, but only as a favor or courtesy.

"It is permitted and accepted by all civilized communities from mutual interest and convenience and a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return." 5 R. C. L. 910, § 4.

But appellee seeks to sustain its judgment, if not such instruction, upon the following proposition:

"By the great weight of authority in states recognizing that a chattel mortgage is a mere security for debt, removal of the mortgaged property with the knowledge and consent of the mortgagee as against

everyone but the mortgagee himself is a waiver of the lien of the mortgage in so far as it carries with it any superiority of its lien or of right against third persons who may have acquired any ownership or lien against the property in the state to which it has been removed."

In considering this proposition, we will assume that the evidentiary fact upon which it is based is true. There is a line of cases that supports the proposition, and the author in 11 C. J. 424, section 33, says that is "the better authority." However, all of these cases, except one (which we will notice hereafter), give as a reason for the refusal to recognize the mortgagee's interest his negligence in permitting and consenting to the removal of the property into the other state, to be there pledged or mortgaged or sold or dealt with generally by the mortgagor as his property, thus, in effect, lending the property to the mortgagor to be used in defrauding, cheating, and deceiving innocent people living in the state to which the property was removed. One court puts it thus:

" . . . The grace of comity should not be extended to cases wherein it appears that the mortgagee consented to the removal, since in such cases he thereby negligently places it within the power of the mortgagor to deceive and defraud innocent people in the state into which the property may be removed." *Newsum* v. *Hoffman,* 124 Tenn. 369, 137 S. W. 490.

See, also, *Moore* v. *Keystone Driller Co.,* 30 Idaho 220, L. R. A. 1917D 940, 163 Pac. 1114; *Ashland Finance Co.* v. *Dudley,* 98 W. Va. 255, 127 S. E. 33.

The only case cited by appellee announcing a rule under facts somewhat similar to those in this case and tending to support appellee's proposition is *Jones* v. *North Pacific Fish & Oil Co.,* 42 Wash. 332, 114 Am. St. Rep. 131, 6 L. R. A. (N. S.) 940, 84 Pac. 1122. In that case the contest was between the mortgagee and open creditors of the mortgagor, all of

the parties and the property being in Alaska, where the mortgage was made, executed, and recorded. The property was shipped to Seattle, Washington, by the mortgagor with the consent of the mortgagee, and, after it reached its destination, the Alaskan creditors brought suit in the Washington courts to subject it to the payment of their debt, claiming priority over the mortgage. The court there held that the mortgagee, having consented to the mortgagor's removal of the property from the situs of the mortgage, waived his mortgage "as against every person except the mortgagor." We find no other case that announces the rule so broadly. Under the rule as stated in this case actual knowledge of a chattel mortgage would not defeat a purchaser of the property or an encumbrancer, if he found it in a state not the situs of the mortgage. Indeed, this goes farther than the appellee's proposition. As bearing upon the Jones case as an authority, see *Rodecker* v. *Jannah,* 125 Wash. 137, 215 Pac. 364.

Whatever rights the appellee acquired in the mortgaged property were acquired by reason of the indemnity assignment of April 23d and as of that date. In that instrument is this statement: "This assignment shall be in full force and effect as of the date hereof, should the undersigned fail," etc. Now, when a chattel mortgage is placed of record in the county where the property is located and where the mortgagor resides, as was done in this case, any subsequent encumbrances, mortgages or liens upon the property of necessity must be inferior to it. The rights of both the company and Allen were acquired in California, and before the property in dispute was removed from that state to Arizona. In other words, the property was mortgaged there to Allen and equitably assigned to the company by an assignment executed in Arizona after the mortgage was placed of record, and then

the property was brought into Arizona. It would seem that the priority of right as it existed in California ought to be recognized in this state. Indeed, we think that is the law. Comity in such circumstances does not require that we reverse the order of priority, but rather that we accept and enforce the status as fixed before the property was brought to Arizona. If the *lex loci contractus* is the same as in Arizona, and in the absence of a showing to the contrary we must assume it is, 5 R. C. L. 917, section 11, then there can be no question but that the mortgage should have precedence over the appellee's assignment. The instruction was therefore erroneous.

We think appellant Allen under the law and the evidence was entitled to recover the property covered by his mortgage, or to have judgment for its value. As he did not execute a redelivery bond and retake possession, only the issues of value and damages, if any, should have been submitted to the jury. The court should have granted Allen's motion for an instructed verdict on the issue of title.

The judgment is reversed and the cause remanded, with directions that a new trial be had to determine the value of the property, and what, if any, damages appellant Allen may have sustained by reason of the taking of his property by appellee; and that judgment be entered in favor of appellant Allen for the value of said property and the damages so ascertained.

LOCKWOOD, C. J., and McALISTER, J., concur.