BANK OF QUINWOOD, *et al.*

*v.*

JULIUS MARCUM, *et al.*

(No. 10211)

Submitted January 31, 1950. Decided March 7, 1950.

LOVINS, PRESIDENT, not participating.

*Joseph Luchini,* for plaintiffs in error.

No appearance, for defendants in error.

FOX, JUDGE:

James C. Lewis prosecutes this writ of error to a judgment of the Circuit Court of Raleigh County, entered on the 16th day of June, 1949, in an action of detinue in which the Bank of Quinwood, a corporation, and S. J. Legg, trustee, were plaintiffs, and Julius Marcum, J. Earl Lewis and James C. Lewis were defendants, in which the possession of a Buick Sedan automobile, Serial No. 14094560, Motor No. 44279930, was sought, and if the possession thereof could not be obtained for the value thereof, alleged to be

$605.81, exclusive of interest. No process in the case was obtained on the defendant Julius Marcum, but a plea of the general issue was filed on the part of all of the defendants. The case was tried before jury, and during the progress of the trial, the defendant, J. Earl Lewis, was dismissed as a defendant. At the conclusion of the testimony in the case, the jury, at the direction of the court, returned a verdict in favor of the plaintiffs, and against the defendant, James C. Lewis, for the recovery of the said automobile, and if possession thereof could not be had, a verdict in favor of the plaintiffs against said James C. Lewis for the sum of $605.81. A motion to set aside the said verdict was overruled by the court, to which action said Lewis excepted at the time, and judgment was entered on said verdict. On September 19, 1949, we granted this writ of error.

The facts of the case are these: On July 15, 1948, Julius Marcum, then a resident of Greenbrier County, executed a deed of trust to S. J. Legg, trustee, by which he conveyed to said trustee the automobile described in plaintiffs' summons, in trust to secure to the Bank of Quinwood the payment of the sum of $907.44. This deed of trust was recorded in the office of the Clerk of the County Court of Greenbrier County on July 17, 1948. According to the evidence, which is not in dispute, the said Julius Marcum moved to Raleigh County, West Virginia, in September, 1948, and took with him the automobile aforesaid. The Bank of Quinwood did not learn of the removal of said automobile to Raleigh County until between the 1st and 15th days of December, 1948. On January 20, 1949, it recorded its deed of trust in the office of the County Clerk of Raleigh County. The said Marcum continued to remain a resident of Raleigh County, and to retain the possession of said automobile until on or about the 8th day of January, 1949.

On January 16, 1946, H. B. Powers and M. W. Powers, doing business as the Beckley Loan Company, recovered a judgment against Julius Marcum and Goldie Marcum for $220.00 and costs, with interest at the rate of two and one-half per cent per month. On January 4, 1949, they

caused execution to be issued on said judgment, and on the 8th day of January, 1949, said execution was levied on the automobile aforesaid, covered by the deed of trust aforesaid, and the said automobile was sold under said execution on January 25, 1949, and purchased by the defendant, James C. Lewis, for the sum of $442.00.

After the execution on said judgment had been issued, and levied, M. W. Powers, assuming to be manager for the Beckley Loan Company, wrote a letter to the Bank of Quinwood in which he said:

> "I have a Buick 1941 sedan belonging to Julius Marcum picked up on an execution raised on a judgment which we hold against him. He says that he owes you several hundred dollars on the car, but we can find no record of a lien in our County Clerk's Office. What kind of a lien do you hold and do you have it recorded?"

Evidently the Bank of Quinwood answered this letter, because, on January 18, 1949, M. W. Powers, as manager, wrote the following letter:

> "If you did not record your trust deed in this county within the time required by law after Marcum moved over here, you are out of luck and had better arrange to buy in the car to protect your interest. It is going to be sold. The records in the office of the county court here disclose no lien recorded."

These letters would indicate that the Beckley Loan Company, prior to its assignment of its judgment to James C. Lewis, hereafter noted, had notice of some character of lien against the said automobile held by the Bank of Quinwood, and we think the record indicates that the Beckley Loan Company had such notice as put it on inquiry as to the nature and the amount thereof. Whether it had this notice at the date of the issuance of its execution and the levy thereof, the record does not disclose.

Whatever the situation may have been, the Beckley Loan Company, through its owners H. B. Powers and M.

W. Powers, assigned its said judgment to the defendant, James C. Lewis, on January 20, 1949, and the same was filed for record in the office of the Clerk of the County Court of Raleigh County on January 20, 1949, the same day on which the deed of trust aforesaid was admitted to record in said office. James C. Lewis testifies that his assignment was filed for record about ten o'clock a. m. of January 20, 1949, and that at the time he so filed the same the records of said office did not disclose any lien against the automobile here involved. Neither the clerk's certificate admitting to record the deed of trust, nor the certificate admitting to record the assignment aforesaid, show on their face the hour of the day when they were admitted to record. However, the case of *Horsley* v. *Garth & Colquit*, 2 Gratt. (43 Va.) 472, holds, in effect, that the endorsement of the clerk on a deed showing the day when it was filed with him for record is not conclusive as to the day when the deed was so filed; but that the true day may be shown by parol testimony. If this be true, then the testimony of James C. Lewis as to the time of day he actually filed his assignment for record, and his testimony that at that time he found no other lien against the automobile involved, may be sufficient to show that his assignment was filed for record in advance of the filing for recordation of the deed of trust aforesaid. It is upon this state of facts that the plaintiffs instituted their action.

The record discloses that the plaintiffs, in the prosecution of their action, rely solely upon the contention that Code, 40-1-11, saves the lien of their deed of trust, provided the same was admitted to record, in the county to which the automobile in question was removed, within three months after they first learned of its removal to that county, which, as indicated above, was not earlier than the 1st of December, 1948. Obviously, if this contention be true, the recordation of the said deed of trust on January 20, 1949, saved their lien against lien creditors and purchasers. This contention requires reference to Sections 9, 11 and 13, Article 1, Chapter 40 of the code. Section 9 reads·

> "Every such contract, every deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate or goods and chattels, shall be void as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be."

Section 11 reads:

> "If any goods or chattels mentioned in such writing be removed from a county in which it is admitted to record, such writing shall, within three months after such removal, be admitted to record in the county to which the property is so removed; otherwise the same, for so long as it is not admitted to record in such last mentioned county, shall, as to the property so removed, be void as to such creditors or purchasers. * * *"

with the reservation as to infants and insane persons. Section 13 provides:

> "Where two or more writings embracing the same property are admitted to record in the same county on the same day, if the previous sections do not provide for the case, that which was first admitted to record shall have priority in respect to the property in such county."

Whatever may have motivated the Beckley Loan Company to assign its judgment against the Marcums on January 20, 1949, and after the issuance of execution and the levy thereof, it is not shown in the record of any bad faith on the part of the defendant, James C. Lewis. So far as the evidence discloses, he purchased the said judgment in good faith and for a valuable consideration and without any notice of the existence of the lien on the automobile involved now asserted by the Bank of Quinwood. If this be true, then he comes squarely within the provisions of Section 11, quoted above, and there would seem to be no escape from the conclusion that he was a creditor entitled to be protected thereby. Whatever notice the Beckley

Loan Company may have had of the Bank of Quinwood's lien can not be treated as binding on Lewis without some showing that such knowledge was communicated to him. The Beckley Loan Company may have had some information with respect to the Bank of Quinwood's lien, such as to require it to make further investigation to ascertain the nature and extent of said lien. Where there is actual notice of the existence of a lien on certain property, a purchaser of that property, or of a lien against same, will be a purchaser with notice of such lien and not a purchaser without notice.

> "Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself. It is well settled that what is sufficient to put a person upon inquiry will charge him with knowledge of the facts of which a diligent pursuit of that inquiry would have informed him."

7 Michie Digest, Va. & W. Va. Reports, 768, and cases there cited. This principle, however, under the evidence in this case, cannot be applied to the defendant, James C. Lewis, because whatever rights the Bank of Quinwood would have had, as between it and the Beckley Loan Company and its owners, or one of them, there would seem to be no basis for any finding that the defendant Lewis was anything other than a purchaser of the said judgment without notice of the Bank of Quinwood's lien, unless it be clearly shown that prior to the filing of his assignment for record, on January 20, 1949, the deed of trust in favor of the Bank of Quinwood had been actually filed for record prior thereto.

The position taken by the Bank of Quinwood and upon which it seemed to rely in the trial of the case, that it could preserve its trust deed lien by having the same recorded in the county in which the said automobile was removed within three months after it learned of its removal to Raleigh County, is untenable. Code, 40-1-11, does

not so provide. It expressly provides that "such writing shall, within three months after such removal, be admitted to record in the county to which the property is so removed," and it is clear, of course, that the automobile having been removed to Raleigh County in September, 1948, more than three months had expired, since the same was levied upon under the execution aforesaid on January 8, 1949.

This question was determined by this Court in the case of *Southern Finance Company* v. *Zegar*, 120 W. Va. 420, 198 S. E. 875. In that case, the owner of an automobile executed a chattel mortgage thereon in North Carolina. The chattel mortgage was recorded in that state December 23, 1936, and on May 1, 1937, the owner left the automobile with a motor company for repairs in Keystone, West Virginia. The owner did not return for the automobile, and on October 2, 1937, it was sold under the levy of an execution based on a judgment rendered in favor of the motor company for the cost of the repairs, and Zegar became its purchaser. The Finance Company first learned that the automobile was in McDowell County on October 3, 1937, and on October 5, 1937, it recorded its chattel mortgage in that county, more than three months from the date the automobile was first brought to West Virginia. In that case, it was argued that Code, 40-3-14, covering conditional sale contracts, should be applied. But, this Court held that Code, 40-1-12, relating to foreign chattel mortgages, is in no wise limited by Code, 40-3-14, relating to conditional sales contracts. Code, 40-1-12, covers the recordation of liens on property removed from other states, whereas the case at bar is a case of removal within this State.

The case of *Ashland Finance Co.* v. *Dudley*, 98 W. Va. 255, 127 S. E. 33, decided in 1925, held that:

> "Where a mortgagor removed a mortgaged automobile into this state from the state of Kentucky, where the mortgage thereon was duly recorded, the mortgage lien was superior to an attachment lien subsequently secured on the au-

tomobile in this state, it not appearing that the mortgagee consented to, or had notice of such removal."

In the body of the opinion, however, this holding is based on the theory of comity between the states. Code, 40-1-12 was enacted to meet situations such as that arising in the *Ashland Finance Co.* case, *supra,* and in the *Southern Finance Company* case, *supra.* It was held:

"The power of the legislature to enact a statute is in no way limited by a well established rule of comity in conflict with the enactment, but fully recognized at the time of its adoption."

Therefore, whatever may have been the rule at the date of the decision in the *Ashland Finance Co.* case, that rule has been superseded by Code, 40-1-12, and so far as we know never was the rule in respect to the removal of property within this State from one county to another.

The judgment of the Circuit Court of Raleigh County, entered on the 16th day of June, 1949, is reversed, the verdict set aside, and the action remanded to said court for a new trial.

*Reversed and remanded.*