# CHARLESTON.

KEYSTONE MANUFACTURING COMPANY V. CLOSE *et al.*

Submitted October 23, 1917.. Decided October 30, 1917.·

1. LOGS AND LOGGING—*Lien—Manufacture—Duration.*

    By the common law a lien is given to every mechanic, artisan or other workman for the value of the labor bestowed by him in the manufacture, improvement, or betterment of goods and chattels delivered to him therefor; but such lien continues only while the goods are retained in the possession of such bailee. (p. 208).

2. SAME—*Manufacturer's Lien—Enforcement—Statute.*

    While at common law such lienor was given no right to enforce his lien except by retaining possession of the property until paid, our statute, section 12a, chapter 75, of the Code, enacted in 1909, enlarged this right by giving him the remedy by. distress, prescribed thereby. (p. 209).

3. SAME—*Liens—Manufacture of Lumber—Waiver.*

    The owners of a saw mill employed by the owner of timber to go upon the land where the timber was located and to occupy a mill site and yard provided for in the deed to him for said timber, and manufacture the same into lumber, had a common law lien on the lumber for the price of their work stipulated in the contract, and under the facts and circumstances in this case, the same was not lost or waived by permitting or suffering a representative of the owner to· take the lumber from the dock where it was placed as sawed and putting it upon stick in said yard, even as against purchasers thereof from the owner of the lumber. (p. 209).

Error to Circuit Court, Tucker County.

Action by the Keystone Manufacturing Company against J. D. Close and others. Judgment for plaintiff, and defendants bring error.

*Reversed, and case remanded.*

A. *Jay Valentine,* for plaintiffs in error.

S. *T. Spears,* for defendant in error.

MILLER, JUDGE:

Claiming a common law lien on certain lumber for a balance of three hundred dollars due them for manufacturing the same under a contract with one M. B. Lentz, defendants, proceeding under section 12a, chapter 75, Barnes' Code, sued out of the office of a justice of the peace a distress warrant and caused the same to be levied on said lumber then on stick at the mill site or yard on the lands of one Bright from whom Lentz had previously purchased the standing timber out of which said lumber had been so manufactured by them.

Thereupon plaintiff, claiming as purchaser of said lumber from Lentz, executed to the officer a forthcoming bond, and also a suspending bond as provided by statute, and intervened by petition filed in the circuit court of Tucker County, where an issue was made up and tried by the court in lieu of a jury, and the finding and judgment of the court was that the plaintiff was the owner and in possession of the lumber so seized and levied on by the defendants, and that defendants were not entitled to enforce their common law lien thereon for manufacturing the same as claimed by them, and that the plaintiff was entitled to hold said lumber as its property free and discharged from the lien so asserted by defendants, and that they recover costs, etc.

The deed from Bright to Lentz for the timber, introduced in evidence, also granted to the latter, ''a site for the mill and yards, etc., upon the cleared ground of the party of the first part'', and gave him two years in which to remove the timber, and also provided that he should have ''the right to use the mill site, and yards, and everything necessary to run

and operate said mill upon the land of the said party of the first part for a period of five years", etc.

The contract in writing between Lentz and defendants recited the acquisition of Lentz from Bright of said timber and the desire of Lentz as therein specified to have the same manufactured into lumber, whereby defendants agreed to manufacture said timber into lumber, at certain stipulated prices per thousand feet and cross ties at a stipulated price per tie, and which was to include skidding, etc., all to be done in a workmanlike manner, the sawing to be done so as to raise the grade of the lumber. And for said sawing, skidding and other work to be done by defendants Lentz thereby agreed as follows; "that the work done the previous month shall be paid for the following month, the end of the month being the 20th of each and every month, and all the lumber in the yard shall be estimated at that time, but in making the payments as aforesaid the said party of the first part shall hold and retain 10 per cent of the earnings of the said parties of the second part, at the price aforesaid until the completion of the work."

The evidence of the witnesses shows that defendants moved their mill upon the Bright land where the timber granted to Lentz was located and there occupied the mill site and lot provided for in the deed; that as the lumber was cut it was placed on a dock near the mill and from there taken by an employee of Lentz and put on stick in the yard, defendants' contract not providing for putting the lumber on stick; but where the contract provides it was to be estimated at the end of each month and paid for as stipulated, except the ten per cent. that was to be retained until the completion of the contract.

Defendants received on account of their work the note of plaintiff to Lentz of $500.00, turned over to them, the proceeds, less discount, amounting to $490.00, and when they completed the work about December 6, 1915, Lentz owed them a balance of $300.00.

The deed from Bright to Lentz is dated August 20, 1915; the contract between Lentz and defendants is dated September 4, 1915; and the contract in writing whereby Lentz un-

dertook to sell the lumber to plaintiff is dated November 27, 1915. In the view we take of the case, however, these dates are unimportant. It is significant that the lumber purporting to be sold by Lentz to plaintiff is described in the contract as that "manufactured and to be manufactured at the Close and Beavers Mill on Pleasant Run, Tucker County, West Virginia." And the contract further provided that Lentz was to deliver all of said lumber f. o. b. cars at Porterwood, West Virginia, as called for by plaintiff, and that should he fail then they were to have the right to put on teams and deliver the same at his cost and expense. And one of the provisions of said contract was that the title to said lumber should pass to and be vested in plaintiff as the same should be placed on stick at the mill where said lumber was then being manufactured, and that the possession thereof should also pass to them as placed on stick.

Defendants proved that on completion of the work they left three persons in charge and possession of the lumber and that they continued in possession thereof until seized and taken into possession by the officer under the distress warrant, and that they thereby continued to hold and retain a lien on the lumber for the balance due them for manufacturing the same.

On the other hand, plaintiff says in support of the judgment that defendants had no lease on the land, but were mere licensees of Lentz, and that although they owned the mill and occupied the mill site and yard therewith as they contend, they had no such exclusive possession of the land, or of the lumber after it was taken from the dock and placed on stick in the yard as to support any lien thereon for the work done thereon by them.

That the common law gives to every mechanic, artisan or other workman a lien for the labor bestowed by him in the manufacture, improvement or betterment of goods and chattels delivered to him therefor, is conceded by counsel for both parties, and besides is well supported by all the authorities on the subject of liens and bailments. 1 Jones on Liens, (3rd ed.) section 731; *Burrough* v. *Ely,* 54 W. Va. 118. And this lien applies to lumbermen for manufacturing logs into

lumber. 1 Jones on Liens, section 703. Such lien is in most if not all respects like a seller's lien for purchase money, and like that exists only so long as possession of the property is held. Respecting the seller's lien and the necessity of retaining possession, it was said in *Buskirk Bros.* v. *Peck*, 57 W. Va. 360, 370, and repeated in *Wiggin* v. *Mankin*, 65 W. Va. 219, 226, "although retention of the possession of the property until payment is essential to its existence, yet possession may be constructive or actual, and where goods are sold, counted out and set apart for the purchaser, but not actually delivered into his possession, the title passes, and there is constructive delivery sufficient to execute the contract, yet the seller had a lien for the purchase money."

While the lien so given by the common law gave the lienor no right except to hold on to the property until his services were paid for, *Burrough* v. *Ely, supra,* 3 R. C. L., section 47, p. 125, nevertheless since the decision in *Burrough* v. *Ely,* the legislature of this state, by section 12a, chapter 75, Code, supra, Acts 1909, c. 43, has at least given the remedy by distress for enforcement of such lien, the remedy pursued in this case, and to that extent if no further enlarged the common law right.

Whether defendants under the contract or by the manner of executing the same ever had or parted with the possession of the lumber in question so as to give them a lien or to lose it as claimed by plaintiff, are questions not entirely free from doubt. While it may be true they held no formal lease on the land for mill site and yard, yet we must assume they were let into possession thereof by Lentz under his deed from Bright, with the same rights which were given him for the purpose of sawing, manufacturing, and storing the lumber, contemplated in the deed and in the contract by defendants with him. The mill was there, and necessarily they must have had the exclusive right to and possession of the land occupied by the mill while engaged in cutting the timber into lumber; and while their contract did not call for sticking the lumber as sawed, neither did it specifically provide that it was to be stacked by Lentz. Necessarily the contract implied some disposition of the lumber, and, as already ob-

served, it specifically provided for its location on the yard and an estimate thereof from month to month and payment therefor by Lentz. The only thing which Lentz did or was suffered to do was to put his man in the yard and to place the lumber on stick as it came from the mill. Can it be assumed from this that the parties contemplated, or that defendants, who provided in their contract for estimates or measurements of the lumber while still in the yard and at the mill, intended, that it should go out of their possession, or to waive or relinquish their lien thereon for the price of manufacturing the same? We can not bring ourselves to the conclusion that such was the contract or the legal effect of their conduct towards the property. The evidence shows on the contrary that on completing the sawing defendants left representatives in charge of the lumber, and that within three days thereafter they sued out the distress warrant and caused the lumber to be taken into the possession of the officer, and thereby did everything in their power to preserve and enforce their lien. Nor do we think they lost the lien by the fact that the representative of Lentz took the lumber from the dock and placed it on stick in the yard. That act is not inconsistent with possession thereof by defendants for the purpose of their lien. The case is not thereby brought within the principles laid down in 1 Jones on Liens, sections 22 and 25, relied on by counsel. The case here is not like the instance noted in section 22, of the owners of a saw mill who permitted boards sawed by them to be moved from the mill; nor like the brick maker referred to in section 25, who was practically only an employee of the owner of the plant, as in the case from Massachusetts, *King* v. *Indian Orchard Canal Co.*, 11 Cush. 231, cited for the text will show. Moreover, we find *Moore* v. *Hitchcock*, (N. Y.) 4 Wend. 292, also a brick maker's case, holding that the plaintiff had a lien for brick made at the plant and on the land of the owner, under a similar contract, and that he could maintain trover against one who wrongfully took the same from his possession under execution against the owner. The delivery of a portion only of the goods does not defeat the lien. 6 C. J. 1136, section 85 (b). And in *Robinson* v. *Larrabee*, 63 Me. 116, 117, it is

said: "There is no question but that the voluntary relinquishment, by the bailee, of possession of the subject of the bailment discharges his lien, unless it is consistent with the contract, the course of business or the intention of the parties." The mere fact that Lentz's representative came on the mill yard and put the lumber on stick, where it was to remain until estimated or measured and payments made, does not evince intention on the part of the defendants to relinquish any right given them by law. Nor is the case here like that presented in *Walker* v. *Cassels*, (S. C.) 49 S. E. 862, holding that, "Where the sawing of certain lumber had been completed, and the sawyers had left the ground without leaving any agent in charge, and plaintiff stacked the lumber, and used some of it, and sold a considerable portion of it", and where it was held the sawyer thereby lost or waived his lien. Nor is this case like *McMaster* v. *Merrick*, 41 Mich. 505, where the acts of the sawyers were inconsistent with their intention to assert a lien, and where they did nothing to preserve or enforce the same, and where indeed the contract did not contemplate such a lien, and which case is distinguished in *Bank* v. *Salt and Lumber Co.*, 91 Mich. 342, the case of a salt manufacturer, and in which it was held that the contractor, under the circumstances of that case, not unlike those in this case, had not lost his lien.

From all which we conclude that the possession on the yard of the lumber in question was the possession of the defendants, and that they had not parted therewith at the time they sued out the distress warrant and caused the officer to seize the same for the debt due them, and that their lien thereon remained intact and enforceable by such distress.

We, therefore, reverse the judgment and remand the case to the circuit court to be therein further proceeded with in accordance with the principles herein enunciated, and further according to law.

*Reversed, and case remanded.*