# CHARLESTON.

W. J. RINE and A. H. LYNCH v. THE IRELAND LUMBER Co.

Submitted March 30, 1920.   Decided April 6, 1920.

1.  SALES—*Qualified Delivery Does Not Defeat Seller's Lien for Price.*

    A seller of goods for cash has a lien for the price so long as he retains possession, and a qualified delivery does not defeat his lien.  (p. 116).

2.  SAME—*Contract for Sale of Timber Entitled Seller to Lien for Price Until Lumber Loaded on Cars.*

    A contract for the sale of timber at a certain price per M. feet, to be ascertained by Doyle's Log Rule, whereby the seller

agrees to furnish a mill site and lumber yard for sawing the same, the seller to cut and haul the logs to the mill where they are to be scaled and sawed by the buyer at his own expense, and the lumber then hauled to the railroad and loaded on cars by the seller, one half the price per M. feet to be paid monthly as the logs are delivered at the mill and the remaining half when the lumber is loaded on cars, contemplates final delivery on board the railroad cars, and entitles the seller to a lien for the unpaid balance of the price, on all the lumber hauled to the railroad and not loaded on cars.  (p. 117).

Appeal from Circuit Court, Webster County.

Bill in equity by W. J. Rine and another against W. P. Shock and O. S. Boggess, partners trading in the firm name of the Ireland Lumber Company. From a vacation order, dissolving an injunction order against defendants, plaintiffs appeal.

*Reversed and remanded.*

*W. S. Wysong* and *Cogar & Hoover,* for appellants.
*Hall Bros.* and *Morton & Wooddell,* for appellee.

WILLIAMS, PRESIDENT:

Claiming that a balance of more than $1500.00 of the purchase money was due them on a sale of lumber, plaintiffs, W. J. Rine and A. H. Lynch, filed their bill in equity against the purchasers, W. P. Shock and O. S. Boggess, partners, trading in the firm name of the Ireland Lumber Co., defendants, for the purpose of enforcing their seller's lien against 75,000 feet of lumber stacked at Brown's Siding on the West Virginia Midland Railroad, and to enjoin the shipment of said lumber until the balance of the purchase money due thereon had been fully paid. On the 28th day of January the court entered an injunction order restraining defendants from loading and  shiping  said lumber from said point on the railroad and from interfering with the same in any manner, until the further order of the court.  Plaintiffs gave bond, in compliance with the injunction order, in the penalty of $500.00, which was approved by the clerk on the 4th of February, 1919.  On the 14th day of February the defendants gave notice that they would move the judge of the circuit court in vacation in chambers at Buckhannon, Upshur County, on the 20th of February to dissolve the injunction. At the time they received said notice plaintiffs had given notice

to take depositions and were then engaged in taking depositions of witnesses to support their bill. On the 20th of February the motion to dissolve was argued by counsel and submitted to the judge in chambers and on the 28th of February a vacation order was made dissolving the injunction, and from that order plaintiffs appeal.

The question on which the case must turn is, did the plaintiffs have a seller's lien upon the lumber piled at the railroad siding? This question in turn depends upon the proper construction of the contract of sale. It is in writing and is set out in terms in the bill. It shows that plaintiffs on the 14th of February, 1917, sold to defendants, the Ireland Lumber Co., all the timber of certain specified varieties on two certain tracts of land, the A. Shreve and the Brice Utt tracts, at $14.00 per thousand feet; that plaintiffs were to cut and haul the logs to the skidways at the sawmill, where they were to be sawed by defendants at their own expense, except about twenty or thirty thousand feet of mill culls reserved by the sellers for two barn patterns, and for the sawing of which they agreed to pay defendants $5.00 per thousand feet. Seven dollars per thousand feet was to be paid on the 10th of each month, for all logs cut and skidded during the preceding month, "and the residue to be paid as delivered on West Virginia Midland R. R. cars at Brown's Siding." Plaintiffs were to furnish mill and camp sites and yard room for the purpose of sawing the timber and defendants were to saw it at their own expense, except the two barn patterns not included in the sale. The timber has all been cut and moved to the saw mill and sawed into lumber, and all but about 75,000 feet of the lumber has been shipped and sold. This 75,000 feet has been hauled to the Brown's Siding but has not been loaded on the cars. Plaintiffs claim possession of the lumber at the railroad siding until it is loaded on the cars. They claim that, until this is done, there has been no delivery to the purchaser under the terms of the contract of sale. A lien for the price is incident to the contract of sale of goods unless it is a sale on time, but the seller's lien depends upon whether or not there has been a delivery of possession of the thing sold to the purchaser. A seller's lien is gone after he delivers possession to the purchaser. 24 R. C. L., p. 127; Jones on Liens (3rd ed.) sec. 806. Defendants

contend that delivery to them was made on the skidways at the mill, and that the title passed to them at that time. But a seller's lien is a thing distinct from the title. It is a right to retain possession of the thing sold until the price is paid. Even though a seller has delivered possession of a part of the goods sold he may retain possession of the remainder to secure the balance of the purchase price due on the whole where the contract of sale is entire. Jones on Liens (3rd ed.) sec. 838.

The terms of the contract show the clear intention of the contracting parties that the lumber was all to be paid for before delivery was completely made, and that it was to be delivered on board the cars. The logs were turned over to the purchasers to be measured and then manufactured into lumber by them, but this was before final delivery under the contract could be made. It called for delivery after the timber was sawed by defendants, and until that was done by them plaintiffs could not complete their contract and deliver the lumber on board the car, which was the only place of delivery specified in the contract. There is no indication that the second payment of $7.00 per thousand was intended as compensation for the hauling from the mill to the railroad and loading on the cars. The $14.00 per thousand is the price to be paid for the lumber scaled at the mill, sawed by defendants and then delivered by plaintiffs on board the cars. The turning over of the timber on the skidways of the mill was not the delivery the contract contemplated, but was simply done to enable the defendants to manufacture the timber into such lumber as they wanted for the market. The timber simply passed through their hands for that purpose, and really never passed out of the possession of plaintiffs until loaded on board the car. The contract expressly provides that plaintiffs shall furnish the mill and camp sites and yard room for manufacturing the lumber and, presumably, they did so. Hence the lumber was in possession of plaintiffs all the time it was on the mill yards; it was on their premises or on premises in their control. *Keystone Mfg. Co.* v. *Close,* 81 W. Va. 205.

The cases of *Moore* v. *Patchin,* 71 W. Va. 192; *Buskirk Bros.* v. *Peck,* 57 W. Va. 367; and *Bank of Huntington* v. *Napier,* 41 W. Va. 481, do not determine the question here presented. Those

cases turned upon whether or not title to the property had vested in the vendee. Here there is no question that title passed to the defendants when the logs were scaled on the skidway and sawed into lumber. The vendors and vendees had then done all that was necessary to be done to ascertain the amount of money to be paid, and the vendees had expended labor and money in converting the timber into lumber, but plaintiffs had not fulfilled their contract so as to entitle them to demand the full price; they were required by the contract to haul the lumber to the railroad and to deliver it on board the cars, and until that was done they still had possession and, therefore, a seller's lien.

In the three cases just cited the rights of creditors of either the vendor or vendee were involved and the title was questioned, while in the present case the question is solely one between the vendor and vendee and the title is not involved, but only the right of the vendor's to retain possession of the property until the price is fully paid, the sale being for cash to be fully paid on delivery. The turning over of the logs on the skidway of the mill was only a qualified delivery for the purpose of enabling the purchaser to manufacture the timber into lumber which had to be done before plaintiffs could complete their contract and make delivery at the place agreed upon. Such qualified delivery did not destroy their lien. Jones on Liens, secs. 808 and 809: *Thompson v. B. & O. R. R.*, 28 Md. 396; *Owens v. Weedman*, 82 Ill. 409.

Defendants answered and denied that anything is due plaintiffs and claimed that they have been over paid for the lumber. But this question was not decided, nor was the case matured for final decision at the time the injunction was dissolved. Plaintiffs made out a prima facie case entitling them to a temporary injunction and, under the principles announced in *Meyer v. Meyer*, 60 W. Va. 473, the injunction should have been allowed to stand until the issue as to the amount due, if any, is decided. The decree will be reversed and the cause remanded for further proceedings to be had according to the principles herein announced and further according to the rules and principles governing courts of equity.

*Reversed and remanded.*