FRUEHAUF CORPORATION

*v.*

HUNTINGTON MOVING & STORAGE CO., *et al.*

(No. 13411)

Decided September 9, 1975.

*Greene, Ketchum & Baker, James D. Nash, Jr.*, for appellants.

*Huddleston, Bolen, Beatty, Porter & Copen, R. Kemp Morton* for appellee.

HADEN, CHIEF JUSTICE:

This is an appeal by Huntington Moving & Storage Company and James J. Goode, defendants below, from the final judgment of the Circuit Court of Cabell County which granted to Fruehauf Corporation, appellee and plaintiff below, its motion for summary judgment.

On June 27, 1967, R. G. Maher purchased from the appellee a 1967 Fruehauf trailer by conditional sales contract, after which appellee perfected a security interest by recording the lien on a certificate of title issued by the Division of Motor Vehicles of the State of Virginia, and by properly filing the certificate in that state. On April 17, 1970, while the price of the trailer remained unpaid, Maher obtained additional trailers from Fruehauf Corporation. By a second security agreement Maher gave Fruehauf a security interest in the trailers as security for an indebtedness of $177,032.52, which included the unpaid purchase price of the subject trailer. Again, Fruehauf perfected in Virginia its lien on the trailer. Thereafter, Maher breached the terms of his security agreement with Fruehauf by defaulting on the agreed contractual payments.

In July 1971, Maher brought the trailer to appellant, Huntington Moving & Storage Company, for the purpose

of having certain repairs and improvements made. He did not, however, return to render payment for such repairs or improvements and the trailer remained in the possession of appellant. On February 28, 1972, Fruehauf obtained a judgment against Maher in the United States District Court for the Eastern District of Virginia. That court determined that Fruehauf had a valid lien and security interest in the trailer and awarded Fruehauf possession of the trailer.

On March 10, 1972, the appellee discovered from Maher that the trailer had been moved to West Virginia and was in the possession of the storage company. Appellee instituted a civil action in the Circuit Court of Cabell County against the appellant demanding possession of the trailer or, in the alternative, a judgment for its value plus interest and costs. Upon motion, appellee obtained an order naming Goode, an employee of Huntington Moving & Storage Company, as a party defendant because of his status as a colorable "purchaser" of the trailer at a distress sale conducted by a constable to satisfy the storage company's lien. Appellant, Huntington Moving & Storage Company, answered that it had obtained a statutory lien on the subject trailer in July 1971 by reason of repairs, improvements and storage costs worth $3,719.55, and that its statutory repairman's lien was paramount to the appellee's perfected security interest by virtue of *W. Va. Code* 1931, 38-11-3 and *W. Va. Code* 1931, 46-9-310, as amended.

On December 21, 1972, the Circuit Court of Cabell County granted appellee's motion for summary judgment. In ruling that appellee's perfected security interest created a lien prior to that of appellant's repairman's lien, the court ordered possession of the trailer restored to appellee. Appellants appeal from this judgment seeking a reversal and remand with directions to enter judgment in favor of them in the amount of $3,719.55.

It is undisputed that appellee's security interest is valid; it is in compliance with the requirements of Virginia

law and thereby meets the test in *W. Va. Code* 1931, 46-9-103(4), as amended:

> "[I]f personal property is covered by a certificate of title issued under a statute of this State or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

Nor is it controverted that West Virginia recognizes that a lien obtained in a sister state may be superior to a lien subsequently secured in this State. *See, Ashland Finance Co. v. Dudley,* 98 W. Va. 255, 127 S.E. 33 (1925). *See also, Callaghan v. Commercial Credit,* 437 F.2d 898 (4th Cir.1971).

The dispositive issue to be determined in this appeal is whether a perfected security interest in specific personal property has priority over a subsequent repairman's lien created by statute or by rule of law on the same property.

The respective parties concede that *W. Va. Code* 1931, 46-9-310, as amended, is applicable to the instant appeal. This provision was adopted and enacted by the Legislature in 1963 and is part of the Uniform Commercial Code. It reads as follows:

> "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

The statutory language makes it clear that a repairman's lien would have priority over a perfected security interest when the lien is one which is: (1) based upon a rule of law or (2) based upon a statute which does not expressly subordinate it to other liens.

The issue to be determined therefore is dependent strictly upon the language of the lien-creating statute. *W. Va. Code* 1931, 38-11-2, provides, *inter alia*, that:

> "Any lienor shall take such rights as a purchaser of the property deposited with him would take, and shall take subject to other titles, interest, liens, or charges in the same manner that a purchaser would take. The lienor's rights shall be determined as of the time when the property was deposited with him, . . . ."

The succeeding section reads as follows:

> "A person who, while in possession thereof, makes, alters, repairs, stores, transports, or in any way enhances the value of an article of personal property, . . . shall have a lien upon such article . . . while lawfully in the possession thereof, for the charges agreed upon, or, if no charges be agreed upon, then for his just and reasonable charges for the work done or the board or storage or transportation furnished, and may retain possession thereof until such charges are paid. Such lien shall be good against the person who deposited the property with the lienor, and against any other person by whose authority or with whose consent the property was deposited . . . ." [38-11-3]

The parties contend that we are concerned here only with the repairman's lien created by statute and, by final analysis, that is true.

West Virginia, however, has recognized that the common law gives to mechanics, artisans and other workmen a lien for the manufacture or improvement of goods delivered to them, although only while they remain in possession of the goods. *Keystone Manufacturing Co. v. Close*, 81 W. Va. 205, 94 S.E. 132 (1917). The nature of the common-law lien is the right of possession of that personal property on which work and labor has been performed. *Burrough v. Ely*, 54 W. Va. 118, 46 S.E. 371 (1903). Accordingly, if appellant's possessory rights are

derived from the common-law lien rather than from the statute, the "unless" clause contained in *W. Va. Code* 1931, 46-9-310, as amended, would not apply and the apellant's lien would thus take priority over appellee's perfected security interest.

In determining which lien should apply, the apparent general rule provides that:

> "[A] lien provided for by a statute which is merely declaratory of the common law must be interpreted in conformity with its principles, but where the legislature has enlarged and defined a common-law lien, its definition supersedes the definition of the courts, and thereafter the exercise of the powers of the courts with respect to such liens must be consistent with the legislative definition." 51 Am. Jur. 2d *Liens* §38 (1970).

This Court has recognized that *West Virginia Constitution*, Article VIII, Section 21 gives the Legislature the power to alter or repudiate the common law. *Wallace v. Wallace*, W. Va., 184 S.E.2d 327 (1971); *Seagraves v. Legg, et al.*, 147 W. Va. 331, 127 S.E.2d 605 (1962); *State v. Gray*, 132 W. Va. 472, 52 S.E.2d 759 (1949); and *State v. Farmers Coal Co.*, 130 W. Va. 1, 43 S.E.2d 625 (1947). However, the common law is not to be deemed altered or abrogated by statute unless the Legislature's intent to do so be plainly manifested. *Seagraves v. Legg, supra; Shifflette v. Lilly*, 130 W. Va. 297, 43 S.E.2d 289 (1947).

At common law the rights of a lienor who repaired goods were very limited:

> "A common law lien on personal property for work and labor performed is the mere right of detention of such property until satisfaction of debt, and is not the subject of equitable jurisdiction or protection in the absence of statutory provision or other grounds of equitable interference."

> "Such lien only secures to the lienor the right of possession and it is not otherwise enforceable. A sale made by him of the property would be

wrongful." *Syllabus* points 1. and 2., *Burrough v. Ely*, 54 W. Va. 118, 46 S.E. 371 (1903).

But in the case of *Keystone Manufacturing Co. v. Close*, *supra*, the Court acknowledged the broadening of this common-law lien by the Legislature:

> "While at common law such lienor was given no right to enforce his lien except by retaining possession of the property until paid, our statute, section 12a, chapter 75, of the Code, enacted in 1909, enlarged this right by giving him the remedy by distress, prescribed thereby." *Id.*, *Syllabus* point 2.

*W. Va. Code* 1931, 38-11-14 through 17, respectively, provide for the various remedies available to possessory lienholders. These sections greatly enlarge the common-law lien, particularly *W. Va. Code* 1931, 38-11-14 which allows for a sale of the goods by auction. *W. Va. Code* 1931, 38-11-3 defines a possessory lien in expansive language. The broader statutory lien only faintly resembles its common-law antecedent. Consequently, in accordance with the general rule previously stated, this Court is required to be consistent with the statutory definition since the Legislature has "enlarged and defined" the common-law lien. Furthermore, by clearly broadening the common-law lien, the Legislature has plainly demonstrated its intent to supplant the common-law lien with a statutory one, thereby satisfying the *Seagraves v. Legg, et al.*, *supra*, test.

Appellants contend that only section 3 of article 11 (*W. Va. Code* 1931, 38-11-3) is the lien-creating statute and, since it is silent on the question of subordination, the section does not subordinate a repairman's lien to any other lien or security interest. Appellee, on the other hand, maintains that the entire article must be considered as the lien-creating statute; specifically that sections 2 and 3 must be read in *pari materia*. We find appellants' assertions without merit and adopt the view of the appellee.

This Court has consistently held that statutes relating to the same subject matter must be read and applied together regardless of whether reference is made by one

to the other. *State ex rel. West Virginia Board of Education v. Miller*, 153 W. Va. 414, 168 S.E.2d 820 (1969); *State v. Condry*, 139 W. Va. 827, 83 S.E.2d 470 (1954). Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. *State ex rel. Slatton v. Boles*, 147 W. Va. 674, 130 S.E.2d 192 (1963); *State ex rel. Graney & Ford v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958). We find that a proper reading of article 11, as it relates to repairman's liens, requires sections 2 and 3 thereof to be read in *pari materia*. A clear reading of section 2 reveals the Legislature intended that lienors, created by the article, would take only such rights as the purchaser of the property held by the lienor would have, and that the rights of the lienor are to "be determined as of the time when the property was deposited with him . . . ."

While section 3 [38-11-3] creates the lien herein considered, it does so under the restrictions set forth in section 2 [38-11-2]. To hold otherwise, unless the section itself so states, would be contrary to previous rulings of this Court. Specifically, the Court held in *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471 (1962) that, to ascertain legislative intent, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety. *Carolina Lumber Company v. Cunningham*, W. Va., 192 S.E.2d 722 (1972); *Spencer v. Yerace*, W. Va., 180 S.E.2d 868 (1971). We find that the legislative intent is clear when these two sections are read in *pari materia* and that the appellant took only such rights as a purchaser of the mobile home would have. There having been a prior perfected security interest in appellee, appellant's repairman's lien attached to the trailer subject to that interest.

The respective parties refer us to several decisions on this issue from other jurisdictions and we have examined these cases carefully. Suffice it to say that where

cases have been cited by appellants, which are contrary to our holding herein, significant distinctions are apparent. In *Gables Lincoln-Mercury, Inc. v. First Bank & Trust Co.*, 219 So.2d 90 (Fla. App. 1969), *Corbin Deposit Bank v. King*, 384 S.W.2d 302 (Ky. 1964), and *Commerce Acceptance, Inc. v. Press*, 428 P.2d 213 (Okla. 1967), the courts interpreted lien-creating statutes which did not subordinate those liens created to prior perfected security interests. In *Westlake Finance Company v. Spearmon*, 64 Ill.App.2d 342, 213 N.E.2d 80 (1965) and *Manufacturers Acceptance Corp. v. Gibson*, 220 Tenn. 654, 422 S.W.2d 435 (1967), there were no specific lien-creating statutes. While in *Commonwealth Loan Co. v. Berry*, 2 Ohio St.2d 169, 207 N.E.2d 545 (1965), a construction of section 9-310 of the Uniform Commercial Code was rendered which is inconsistent and contrary to conclusions reached by the majority of jurisdictions. On the other hand, the cases cited by appellee are decisions rendered upon the identical issue we have before us and ones which have adopted the view we now adopt. *Pennington v. Alexander*, 103 Ill.App.2d 145, 242 N.E.2d 788 (1968); *Municipal Equipment Co. v. Butch & Son Deep Rock*, 185 N.W.2d 756 (Iowa 1971). *See also*, 4 Anderson, *Uniform Commercial Code*, 339-347, §§ 9-310:1—9-310:14 (1971), and numerous cases cited therein.

We are, therefore, of the opinion that the judgment of the Circuit Court of Cabell County is correct and we affirm.

*Affirmed.*