No. 13-0936 – *Estella Robinson v. City of Bluefield*

**FILED**

**October 31, 2014**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, dissenting:

The majority's opinion is not only wrongly decided, but it is patently obvious that it is result-oriented. In their misguided quixotic chivalry towards dogs, the three members of this Court constituting the majority have not only perverted the law, but have forgotten that human beings also have value; and when an animal is vicious, people need protection from them. This dog's owner acknowledged he was vicious.[1] He attacked the City of Bluefield's Animal Control Officer Randall Thompson, causing him to be hospitalized for four and one-half days, to undergo serious surgery, and to suffer severe injuries to his hands. In order to spare the life of the vicious dog, the majority ignores the West Virginia

---

[1]Ms. Robinson entered a plea of guilty in the Municipal Court of Bluefield to owning, keeping, and/or harboring a dangerous animal in violation of Bluefield Municipal Ordinance § 4-49. As part of this plea, she admitted that the dog was vicious.

1

Constitution,[2] a statute[3] and many municipal ordinances[4] throughout this State; and

---

[2]W. Va. Const. art. VIII, § 11 concerning municipal courts.

[3]W. Va. Code § 8-12-5 (2012 & Supp. 2014) (establishing the general powers of every municipality).

[4]Bluefield Municipal Ordinance § 4-49 (discussed *infra* the text); *see also* Clarksburg Municipal Ordinance § 507.18(i)("The City Manager or his/her designee may order the destruction of a dog that it determines to be extremely dangerous to public health or safety, a dog that has made an extremely vicious attack upon an individual, or a dog declared dangerous whose owner is unable or unwilling to adequately restrain it."); Dunbar Municipal Ordinance § 507.99 ("[A]ny vicious dog which attacks a human being or another domestic animal may be ordered destroyed when in the Court's judgment, such vicious dog represents a continuing threat of serious harm to human beings or domestic animals."); Huntington Municipal Ordinance § 507.08 ("If the Municipal Court shall find, as a result of the hearing upon a complaint, that a dog is vicious or dangerous, as provided under this section, the owner or guardian of such dog shall be fined not more than five hundred dollars ($500.00) or imprisoned not more than thirty days or both. In addition, the Municipal Court may, as a result of said finding that a dog is vicious or dangerous, order such dog be destroyed."); Martinsburg Ordinance § 505.15 ("Any dog finally determined to be vicious or dangerous shall be disposed of by the Animal Control Office in the same manner as such office disposes of other dogs, except that vicious or dangerous dogs may not be made available to the public. . . . If, in the discretion of the Chief Animal Control Officer, or his or her designee, a dog cannot safely be captured and detained, pursuant to subsection (b) above, and the same has been determined to be vicious or dangerous, the Animal Control Office is authorized to take immediate and, if necessary, lethal action, against such dog notwithstanding the fact that no written notice has been communicated to the owner of the dog and that no hearing into said determination has been requested or held."); Morgantown Municipal Ordinance § 507.11 ("The City Manager or his designee may order the destruction of a dog that it determines to be extremely dangerous to public health or safety, a dog that has made an extremely vicious attack upon an individual, or a dog declared dangerous whose owner is unable or unwilling to adequately restrain it."); Parkersburg Municipal Ordinance § 505.17 ("Vicious or dangerous animals or animals suffering with rabies are hereby declared to be public nuisances and a menace to the public safety and may be summarily destroyed if found running at large."); Wheeling Municipal Ordinance § 508.11 ("The City Manager or his designee, the Ohio County Animal Control Officer, Animal Warden or Law Enforcement Officer, may order the destruction of a dog that it determines to be extremely dangerous to public health or safety, a dog that has made an extremely vicious attack upon an individual,

(continued...)

2

obliterates a fair, safe procedure for small towns to deal with a danger to their residents.

This unnecessary unraveling of a municipal court's jurisdiction to enforce municipal ordinances impacts many more cities and many more ordinances than just a single ordinance in Bluefield. As set forth in note four *supra*, the same or similar ordinances enacted by many cities in this State, including Huntington, Morgantown, and Wheeling, to name a few, are now invalid. Additionally, the impact of this decision reaches much farther than just vicious dog ordinances. Any ordinance that provides for enforcement by a municipal court is at risk of being declared invalid if there is a statute that provides for enforcement in magistrate or circuit court. For instance, the entirety of Article III of the Charleston Municipal Code, §§ 10-111 to -163 contains numerous ordinances pertaining to dangerous dogs, cruelty to animals, restrictions on the number of dogs, licensing of dogs and impoundment of dogs, are enforced through the municipal court. *See* Charleston Municipal Code § 10-1(e) (providing that "[v]iolaters of any section of this chapter may be summoned to the municipal court by a humane officer or police officer."). Yet, because there exists similar provisions on similar topics within the provisions of West Virginia Code §§ 19-20-1 to -25 and because West Virginia Code § 19-20-19 provides that "[m]agistrates shall have concurrent jurisdiction with the circuit courts to enforce penalties by this article[,]" all the

---

[4](...continued)
or a dog declared dangerous or vicious whose owner is unable or unwilling to adequately restrain it.").

3

City of Charleston's ordinances concerning animals are potentially invalid.  *See also, e.g.,*

Bluefield Municipal Code §§ 4-39 to 4-64*; Dunbar Municipal Code §§ 505.01 to 505.99 and

507.01 to 507.99; Parkersburg Municipal Code §§ 505.01 to 505.99.

The majority opinion holds in the syllabus point two that

> [b]efore the destruction of a dog may be ordered under the authority of W. Va. Code § 19-20-20[1981], satisfactory proof that the dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals" must be presented before a circuit court or a magistrate.

This holding is derived from the majority's flawed reasoning that the provisions of

Bluefield's municipal ordinance conflict with the provisions of West Virginia Code § 19-20-

20.

To that end, the majority very selectively focuses upon a single principle of

statutory construction which establishes that "[w]hen a provision of a municipal ordinance

*is inconsistent or in conflict with* a statute enacted by the Legislature the statute prevails and

the municipal ordinance is of no force and effect." Syl. Pt. 1, *Vector Co. v. Bd. of Zoning*

*Appeals*, 155 W. Va. 362, 184 S.E.2d 301 (1971) (emphasis added).  In so focusing upon

this particular principle of statutory construction, the majority makes a giant leap that the

Bluefield ordinance conflicts with West Virginia Code § 19-20-20.  The majority, however,

fails to mention that the Legislature specifically defined the phrase "[i]nconsistent or in

4

conflict with" in West Virginia Code § 8-1-2(9)(2012) to mean "a charter or ordinance provision is repugnant to the Constitution of this State or to general law because such provision (i) permits or authorizes that which the Constitution or general law forbids or prohibits, or (ii) forbids or prohibits that which the Constitution or general law permits or authorizes."

So, the question becomes what language contained within the Bluefield Municipal Ordinance §  4-49 is so "repugnant to the Constitution of this State or to the general law" that it either authorizes that which "the Constitution or general law forbids or prohibits," or "forbids or prohibits that which the [C]onstitution or general law permits[?]" W. Va. Code § 8-1-2(9).  Bluefield Municipal Ordinance § 4-49 provides as follows:

> No person shall own, keep or harbor any dangerous animal known by him to be vicious, dangerous or in the habit of biting or attacking persons, whether or not such dog wears a tag or muzzle, and upon satisfactory proof that such animal is vicious, dangerous or in the habit of biting or attacking persons, municipal judge may order any police officer or the animal control officer to cause such animal to be killed. Vicious or dangerous animals are declared to be a public nuisance and a menace to the public safety.

The majority finds that the ordinance conflicts with the provisions of West Virginia Code § 19-20-20 which provides as follows:

5

Except as provided in section twenty-one [§ 19-20-21][5] of this article, no person shall own, keep or harbor any dog known by him to be vicious, dangerous, or in the habit of biting or attacking other persons, whether or not such dog wears a tag or muzzle. Upon satisfactory proof before a circuit court or magistrate that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed.

(Footnote added). Under the majority's analysis, because the language of the ordinance, which provides that "upon satisfactory proof that such animal is vicious, dangerous or in the habit of biting or attacking persons, *municipal judge* may order any police officer or the animal control officer to cause such animal to be killed[,]" is different from the statute, which provides that "[u]pon satisfactory proof *before a circuit court or magistrate* that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed[,]" there necessarily is a conflict.

The ordinance authorizing a municipal court to make this decision is simply not repugnant either to the West Virginia Constitution or the general law set forth in West Virginia Code § 19-20-20. The ordinance neither authorizes that which the West Virginia

_____

[5]West Virginia Code § 19-20-21 (2007) provides for a person to keep "a dog which is generally considered to be vicious, for the purpose of protection," if the person acquires "a special license" from the county assessor and "properly secure[s] such dog in such a manner so as to prevent injury to a person who lawfully passes through or enters upon the property of the keeper or owner."

6

Constitution or general law prohibits, nor does it forbid that which the Constitution or general law permits. *See* W. Va. Code § 8-1-2(9). To the contrary, article VIII, § 11 of the West Virginia Constitution expressly gives the municipal courts in this State the jurisdiction to enforce municipal ordinances as follows:

> The Legislature may provide for the establishment in incorporated cities, towns or villages of municipal, police or mayors' courts, and may also provide the manner of selection of the judges of such courts. *Such courts shall have jurisdiction to enforce municipal ordinances*, with the right of appeal as prescribed by law.

(Emphasis added).

Moreover, municipal courts are similar to magistrate courts. For instance, municipal courts like magistrate courts are not courts of record, but only record proceedings in very limited instances.[6] Further, decisions from both courts are appealable to the circuit court.[7] It therefore is unclear how allowing a municipal court to enforce an ordinance that

---

[6]*See* Syl. Pt. 6, *Martin v. W. Va. Div. Labor Contractor Licensing Bd.*, 199 W. Va. 613, 486 S.E.2d 782 (1997) ("Magistrate is not a court of record as contemplated by W. Va. Code § 21-11-14(h) (1991)."); *see also* W. Va. Code § 8-10-2 (requiring municipal courts to comply with Magistrate Court Rule 17 and record proceedings where limit jury trial in misdemeanor case in which jail time may be imposed); W. Va. Code § 50-5-8 (2008) (requiring "[t]rials before a magistrate when jury is empaneled shall be recorded electronically."); W. Va. R. Crim. P. for Magistrate Courts 5.1 (requiring criminal preliminary examinations to be electronically recorded).

[7]*See* W. Va. Code § 8-34-1 (2012) (concerning appeals of municipal court cases to circuit court); W. Va. Code § 50-5-12 (establishing appeals from magistrate court to circuit court in civil cases) and § 50-5-13 (establishing appeals from magistrate court to circuit court

(continued...)

7

is virtually identical to the statute causes the ordinance to be repugnant either to the Constitution or the statute.

The majority also tosses out the idea that the ordinance must fail because of the general rule of statutory construction which provides that "a specific statute be given precedence over a general statute relating to the same subject matter." Syl. Pt. 1, in part, *UMWA by Trumpka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984). Interestingly, a significant part of the foregoing syllabus point was omitted in the majority opinion. The syllabus point in its entirety is as follows: "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter *where the two cannot be reconciled*." *Id.* (emphasis added). The phrase "where the two cannot be reconciled" is pivotal in this case because the majority deliberately chooses to ignore that the provisions of West Virginia Code § 8-12-5(26), which gives a municipality the authority to enact an ordinance providing for the destruction of dogs, are easily reconciled with the provisions of West Virginia Code § 19-20-20, which also concerns the destruction of dogs. That the statutes are reconcilable is supported by additional general rules of statutory construction, which unequivocally call any court to strive to resolve the

---

[7](...continued)
in criminal cases).

8

interpretation of statutes in such a way so as to give them the effect intended by the Legislature.

Consequently, it is necessary to present a more complete picture of how this Court should have undertaken its examination of the statutes in this case. In construing a statute or an ordinance, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Moreover, this Court must apply statutes so that no legislative enactment is meaningless, and to read them to harmonize with legislative intent. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." *Id*. at 109, 219 S.E.2d at 362, Syl. Pt. 3. In other words, statutes must be read in pari materia to ensure that legislative intent is being effected. Thus, we have held:

> Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in pari materia to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975); *see also*, Syl. Pt. 3, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958) ("Statutes in pari materia must be construed together and the legislative intention, as

9

gathered from the whole of the enactments, must be given effect."). Significantly, embodied

in our fundamental rules of statutory construction is the basic tenant that

> [a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, it its terms are consistent therewith.

Syl. Pt. 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908).[8]

Under a more complete examination using all the applicable principles of

statutory construction, it is evident that the majority's analysis of the two statutes at issue in

this case is short shrift. First, the majority buries the constitutional grant of authority given

to municipal courts to enforce municipal ordinances in a footnote, *see* note 2 of majority

opinion, in an attempt to hide its importance.

---

[8]*See State ex rel. Smith v. Maynard*, 193 W. Va. 1, 8-9, 454 S.E.2d 46, 53–54 (1994) (citing *Cannon v. University of Chicago*, 441 U.S. 677, 696-97(1979)); *accord* Syl. Pt. 1, *Stamper by Stamper v. Kanawha Cnty. Bd. of Educ.*, 191 W. Va. 297, 445 S.E.2d 238 (1994) ("""The Legislature, when it enacts legislation, is presumed to know its prior enactments." Syllabus Point 12, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).' Syllabus Point 5, *Pullano v. City of Bluefield*, 176 W. Va. 198, 342 S.E.2d 164 (1986)."). *Charleston Gazette v. Smithers*, 232 W. Va. 449, 467-68, 752 S.E.2d 603, 621-22 (2013).

Further, the Legislature enacted Chapter 8 of the West Virginia Code to create and govern Municipal Corporations. Within Chapter 8, West Virginia Code § 8-12-5 enumerates the "General Powers" of every municipality. In particular, West Virginia Code § 8-12-5(26) provides:

> In addition to the powers and authority granted by: (i) The Constitution of this state; (ii) other provisions of this chapter; (iii) other general law; and (iv) any charter, and to the extent not inconsistent or in conflict with any of the foregoing except special legislative charters, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case may require, and by appropriate action based thereon:
>
>    . . . .
>
> (26) *To regulate or prohibit the keeping of animals or fowls and to provide for the impounding, sale or destruction of animals or fowls kept contrary to law or found running at large*[.]

(Emphasis supplied). The Constitution, which gives municipal courts the jurisdiction to enforce municipal ordinances and West Virginia Code § 8-12-5, which was revised by the Legislature in 1969 to give municipalities express and specific authority to enact ordinances that provide for the "destruction of animals," both were in existence before the Legislature enacted West Virginia Code § 19-20-20 in 1981.

When the Constitution, West Virginia Code § 8-12-5(26) and West Virginia Code § 19-20-20 are read in pari materia, as should have been done by the majority to give effect to the legislative intent in this case, it is exceedingly evident why the Legislature found

11

it necessary to enact West Virginia Code § 19-20-20. Prior to § 19-20-20, the Legislature had given counties certain authority under West Virginia Code § 19-20-6. For instance, a "county commission of each county" had the authority to "employ a county dog warden . . . to enforce the provisions of this code with respect to control and registration of dogs, the impounding, care and destruction of unlicensed dogs[,]" but not where the dog was licensed or registered. *Id.* There were also provisions for counties to use concerning how dogs were to be dealt with when they attacked livestock. *See* W. Va. Code §§ 19-20-14 to -18. Until the Legislature enacted West Virginia Code § 19-20-20, however, there was no mechanism in areas *outside* of municipalities for dealing with vicious dogs, whether licensed or not. The Legislature consequently enacted West Virginia Code § 19-20-20 to address how to handle vicious dogs *outside* of municipalities. The Legislature's placement of the statute in the chapter of the code dealing with agriculture is further evidence that it was never intended to impact the municipalities' grant of authority.

Thus, when the statutes are read in pari materia one is lead to the undeniable conclusion the circuit court in the instant case correctly found that

> [i]f not for § 19-20-20, circuit courts and magistrate courts would lack authority to regulate and destroy vicious animals, because Chapter 8 applies only to municipal corporations. In other words, there was no need for the Legislature to reiterate in § 19-20-20 a municipality's authority to regulate and destroy vicious animals because Chapter 8 already did so. The Legislature did, however, need to empower circuit courts and magistrate courts to do the same.

12

Rather than seeking to read the West Virginia Constitution, the pertinent statutes and ordinances in a manner that harmonizes, the majority took the path of rendering the Constitution, West Virginia Code § 8-12-5(26) and Bluefield Ordinance 4-49 meaningless. As this Court has long held, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938). Yet, an absurdity is exactly what has transpired in this case.

To remedy the wrong that has been created by the majority, I strongly encourage the Legislature to correct the Court's usurping of municipalities' constitutional and legislative grant of authority by clarifying that municipal and state courts have concurrent jurisdiction in this arena. The statute at issue can be easily revised to make it painfully clear that it was not intended to take a municipal court's authority away.

We all love dogs. I love and remember my dogs, Skippy, Jordy, Toby, Lucky, and Godzilla, like they were my family. And certainly vicious dogs are usually the result of mistreatment by a human. By way of analogy, the root of adult criminal activity often has its origin in severe child abuse. I will fight long and hard to protect abused children and to make our system more effective in intervening in their lives before they grow up and potentially become violent themselves. But once they have become violent, society at large

13

must be protected.  Similarly, once a dog has become vicious, human beings (and especially children) must be protected from death or injury from dog attacks.  Even the American Society for the Prevention of Cruelty to Animals ("the ASPCA"), the nation's leading animal welfare organization, recognizes that euthanasia may be appropriate where an animal has attacked a person.[9]

In their quest to show how much they love dogs, the majority has issued a ridiculous opinion.  Next, I suppose they will require that animals charged with being vicious are entitled to a court-appointed attorney and a jury trial.

Based upon the foregoing, I respectfully dissent.

---

[9]To be precise, the ASPCA's position statement on dangerous dog laws provides that "[e]uthanasia or permanent confinement of the dog are extreme remedies and should be utilized only when the dog has attacked a person or domesticated animal without justification and has caused serious physical injury or death . . . ." *Position Statement on Dangerous Dog Law*, ASPCA, http://www.aspca.org (last visited October 31, 2014).