No. 18-0018 –    *Murray Energy Corporation and Consolidation Coal Company v. Dale W. Steager, State Tax Commissioner of West Virginia; The County Commission of Marshall County; and Christopher J. Kessler, Assessor of Marshall County*

**FILED**
**April 29, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Jenkins, Justice, dissenting:

Pursuant to the Constitution of this State, all property is to be taxed in accordance with its value: "taxation shall be equal and uniform throughout the State, and *all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law*." W. Va. Const. art. X, § 1 (emphasis added). The Legislature has further interpreted this command as requiring property to be assessed at its "true and actual value," both with respect to real property, generally, W. Va. Code § 11-3-1(a) (LexisNexis 2013 & Supp. 2018), and with regard to the specific type of real property at issue herein: natural resources. *See* W. Va. Code § 11-6K-1(a) (LexisNexis 2013). To this end, W. Va. Code § 11-6K-1(a) directs that "[*a*]*ll* industrial property and *natural resources property shall be assessed annually* as of the assessment date *at* sixty percent of *its true and actual value*." (Emphasis added). Moreover, for ad valorem property tax purposes, this Court previously has recognized that "true and actual value" means "[t]he price paid for property in an arm's length transaction[.]" Syl. pt. 2, in part, *Kline v. McCloud,* 174 W. Va. 369, 326 S.E.2d 715 (1984). *Accord* W. Va. Code § 11-3-1(a) (defining "true and actual value" as "the price for which the property would sell if

1

voluntarily offered for sale by the owner thereof, upon the terms as the property, the value of which is sought to be ascertained, is usually sold, and not the price which might be realized if the property were sold at a forced sale").

It is within this precise context that the challenged taxing methodology of a "three-year rolling average" must be considered and its accuracy in taxing the subject property at its "true and actual" value must be measured. While an efficient and expedient valuation method with statewide application is not inherently problematic, when the methodology selected and employed assigns valuations to property that do not reflect the property's "true and actual" value, the methodology is untenably invalid and financially detrimental to the taxpayer whose property is valued in accordance therewith. Because the Tax Commissioner's use of a "three-year rolling average" to value coal interests for ad valorem property tax purposes does not accurately value the subject property at its "true and actual" value, the majority should have invalidated the legislative rule authorizing the application of this methodology and required the implementation of a more accurate valuation method. Instead, however, the majority has condoned the adoption and use of this methodology, essentially ignoring the erroneous property valuations that have resulted from its application. Because I disagree with the majority's resolution of this matter, I respectfully must dissent.

Neither the parties nor the majority dispute that the Taxpayer's coal interests herein are statutorily required to be taxed at their "true and actual value" in accordance

2

with W. Va. Code § 11-6K-1(a). Though not expressly defined in the specific statute pertaining to the taxation of natural resources property, i.e., W. Va. Code § 11-6K-1(a), the corollary, general real property taxation statute, W. Va. Code § 11-3-1(a), defines "true and actual value" as

> the price for which the property would sell if voluntarily offered for sale by the owner thereof, upon the terms as the property, the value of which is sought to be ascertained, is usually sold, and not the price which might be realized if the property were sold at a forced sale.

Pursuant to the rules of statutory construction, because both W. Va. Code § 11-6K-1(a) and W. Va. Code § 11-3-1(a) are part of the same overall taxation scheme adopted by the Legislature, the two statutes should be read and considered in conjunction with one another. *See* Syl. pt. 2, *Tug Valley Recovery Ctr., Inc. v. Mingo Cty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979) ("When two statutes relate to the same general subject, and the two statutes are not in conflict, they are to be read *in pari materia*."); Syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly."). As such, it is apparent that the term "true and actual value" referenced in W. Va. Code § 11-6K-1(a) also refers to the price a willing buyer would pay a willing

3

seller for the subject property. *See* W. Va. Code § 11-3-1(a). *Accord* Syl. pt. 2, in part, *Kline*, 174 W. Va. 369, 326 S.E.2d 715 (construing "true and actual value" to mean "[t]he price paid for property in an arm's length transaction"); Syl. pt. 3, in part, *Killen v. Logan Cty. Comm'n*, 170 W. Va. 602, 295 S.E.2d 689 (1982) (interpreting "value" in tax assessment context as "'worth in money' of a piece of property–its market value"), *overruled on other grounds by In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W. Va. 14, 672 S.E.2d 150 (2008).

In recognition of this correlation between a property's sales price and its "true and actual value," the Tax Commissioner has promulgated a legislative rule, which the Legislature has approved, by which to calculate such price. The resulting methodology, also known as the "three-year rolling average," provides as follows:

> **"Average coal price"** for purposes of the reserve coal valuation model, means the arithmetic mean of the sum of the last three calendar years of total FOB-source (point of sale, no transportation) values of steam coal mined in West Virginia and sold on the spot market as reported on FERC Form 423 to the United States Department of Energy (USDOE) and to the West Virginia Public Service Commission (WVPSC), divided by annual production, expressed in dollars/ton. Average coal price can also be expressed in dollars per million BTU and is determined by dividing the arithmetic mean of the sum of coal sales, by the sum of all steam coal BTU mined in West Virginia and sold on the "spot" market as reported on FERC Form 423 to the United States Department Of Energy and to the West Virginia Public Service Commission for the three most recent calendar years preceding the July 1st assessment date, calculated for the entire state as well as by coal bed and by location.

4

W. Va. C.S.R. § 110-1I-3.12 (2006) (emphasis in original).  In adopting this methodology, the Tax Commissioner argues that application of this "three-year rolling average" more accurately values coal interests because it accounts for market fluctuations in the sales price of coal.

However, the record evidence in this case tells a different story.  According to the evidence presented below, application of the Tax Commissioner's "three-year rolling average" to determine the sales price of the subject coal interests, as required by the West Virginia Code of State Rules, does *not* accurately value the Taxpayer's coal-based natural resources interests at either their "true" or their "actual" value as required by both the Constitution and statutory law of this State.  *See* W. Va. Const. art. X, § 1; W. Va. Code § 11-6K-1(a).  For the 2016 tax year, i.e., 2015 assessment year, at issue in this case, the Tax Commissioner's use of the "three-year rolling average" to determine a sales price for coal interests in this State yields a figure of $60.35 per ton.  But, as noted in the majority's opinion, the evidence presented by the Taxpayer calculates the average sales price for coal during this time period to be $41.08 per ton, based upon industry publications.  Moreover, applying the "three-year rolling average" methodology to publicly-available data, and excluding the additional, confidential information that the Tax Commissioner includes when calculating this price, yields a coal sales price of $51.50 per ton, according to the Taxpayer's expert.  Finally, even the Tax Commissioner's own expert recognized that data provided by the West Virginia Public Service Commission, the United States Energy Regulatory Commission, and other industry analysts values the sales price of coal for this

5

period "substantially lower" than that reflected by the Tax Commissioner's adopted price of $60.35 per ton, which testimony also is included in the majority's opinion. Yet, despite this overwhelming evidence demonstrating the *inaccuracy* of the "three-year rolling average" to value coal interests for ad valorem tax purposes, which sustains the Taxpayer's burden of proof in such matters,[1] the majority refrains from invalidating this flawed methodology deferring, instead, to the Tax Commissioner's legislatively-granted authorization to adopt and implement the same. The majority further compounds this error by adopting a new Syllabus point condoning the continuation of this factually unsupported practice. *See* Maj. op. at Syl. pt. 7 ("The methodology of calculating and use of the annual average Steam Coal Price Per Ton and coal seam thickness averages for *ad valorem* tax valuation purposes, as set forth in West Virginia Code of State Rules § 110-1I-1 *et seq.* (2006), does not violate the requirement contained in West Virginia Code § 11-6K-1(a) (2010) that natural resources property be assessed based upon its 'true and actual value.'").

---

[1]*See* Maj. op. at Syl. pt. 1 ("'As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct. Thus, a tax assessment of coal property will be presumed to be correct when the assessor, in assessing the coal property: (1) relies upon the legislative rules prescribing the methods by which property is to be assessed; and (2) uses, as a guide, information furnished by the tax department, such as a list of comparable sales of similar property. *The burden is on the taxpayer challenging the assessment to demonstrate by clear and convincing evidence that the tax assessment is erroneous.*' Syl. Pt. 2, *W. Pocahontas Properties, Ltd. v. Cty. Comm'n of Wetzel Cty.*, 189 W. Va. 322, 431 S.E.2d 661 (1993)." (emphasis added)).

6

I simply cannot agree to such a blatant departure from the constitutional and statutory commands that property be taxed at its "true and actual" value. Accordingly, I respectfully dissent.